## Mudd, et al. v. Shroader, et al.

(Decided March 11, 1913.)

Appeal from Marion Circuit Court.

1. Sureties—Release of—Alteration of Instruments.—A surety who seeks to be released from a written contract on the ground that it was altered by agreement between the obligee and the principal obligor, after he signed it, must aver that the alteration was made without his knowledge or consent.

2. Sureties—Alteration of Instruments.—An immaterial change in a farming contract not affecting the substance of it, will not release the surety.

3. Instructions—Not Embodied in Bill of Exceptions Cannot Be Considered on Appeal.—Instructions which are not embodied in the bill of exceptions or made part of the record cannot be considered on appeal. The failure of the court to define fully the measure of damages, is not ground for reversal where under the evidence it was not prejudicial.

BEN SPALDING, S. A. RUSSELL for appellant.

H. S. McELROY, PROCTOR K. McELROY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

In November, 1909, Mrs. Jennie Shroader and N. G. Ballard, doing business under the firm name of Shroader and Ballard, bought of James A. Mudd a farm in Marion County. Some time prior to the purchase, Mudd had rented portions of the farm to Adrian Blair and James R. Carrico for the year 1910, and in the contract of purchase it was agreed that Blair and Carrico were to have

the portions of the farm which Mudd had rented to them for the year 1910, and that Mudd would guarantee that they would faithfully carry out their rental contract. Accordingly a written contract was entered into which was signed by all the parties by which it was stipulated that thirty acres of the land described in the contract should be cultivated in corn by Blair and Carrico, the crop to be equally divided between them and Shroader and Ballard; that six acres out of an eight acre field described in the contract should be cultivated in Burley tobacco, and be equally divided as the corn crop; that the hay on certain grass land should be harvested by Blair and Carrico, and the hay equally divided; that they were to do the work specified in a good workmanlike manner, and with all reasonable diligence. The cultivation of the other land on the farm was left to the option of Shroader and Ballard. Mudd joined in the contract for the purpose of guaranteeing that Blair and Carrico would perform their agreement, or for the purpose of becoming their surety for the performance of the contract. Shroader and Ballard brought this suit, charging that Blair and Carrico had failed to perform the contract, to their damage in the sum of $670.25, for which judgment was prayed against them and against Mudd. The defendants filed an answer in which they traversed the allegations of the petition, and pleaded affirmatively matter in avoidance. Among other things the answer contained the following averment:

"For further answer herein defendants say that the plaintiffs after the making and signing of the contract herein by all of the defendants applied to defendants Blair and Carrico to change and alter the terms of the contract in this that the land specified in the contract to be cultivated in tobacco be changed to certain other lands of plaintiff on the premises, to which change defendants Blair and Carrico consented, and the original tobacco land specified in the contract was, by direction of plaintiffs, planted and cultivated properly in corn, and at the proper time the corn was gathered and one-half thereof delivered by Blair and Carrico to and was accepted by the plaintiffs, as full compliance with the agreement of defendants in said regard. Defendants say that they did all in their power to get the substituted tobacco land entirely set out in tobacco, but tobacco plants failed and they did not have sufficient tobacco plants, and with most

diligent effort could not procure or purchase sufficient tobacco plants to set out in tobacco all the said tobacco land."

The affirmative allegations of the answer were taken as controverted of record, and the case being heard before a jury, there was a verdict and judgment in favor of the plaintiffs for $300. James A. Mudd appeals.

The chief contention made by Mudd on the appeal is that by agreement made by Shroader and Ballard with Blair and Carrico, after the written contract was executed, the terms of the contract were varied without the knowledge or consent of Mudd, and that thereby he was released. While the evidence given on the trial is very confused, and it is by no means certain what its meaning is, we conclude that there was some evidence by the defendants to the effect that it was agreed between the plaintiffs and the tenants that the tenants, instead of putting the six acres in cultivation on the far side of the creek from the house, as specified in the written contract, might put one and a half acres of the tobacco on the side of the creek next to the house, and that after the tenants had failed to plant the tobacco land in tobacco, as they had agreed to do, and had no plants to put in the tobacco, they applied to the plaintiffs to know whether they might put the land in corn, and that the plaintiffs told them they could do as they pleased about that; that they did then put it in corn, and gave the plaintiffs half the corn. Mudd testified on the trial that all this was done without his knowledge or consent, and it is insisted that he was thereby released as surety. The court did not so instruct the jury, and of this Mudd complains. But it will be observed from the answer which we have above quoted that it was not averred that any change was made in the contract without the knowledge or consent of Mudd. The answer seems to have been drafted as a defense for the tenants. It did not apprise the plaintiffs of the defense that is now relied on. The pleading not presenting this defense, the court properly ignored it in his instructions to the jury. 16 Ency. Pl. & Pr., 934-935.

In addition to this the plaintiffs only acquiesced in the tenants putting the tobacco land in corn, when they had failed to put it in tobacco, and their acquiescence in this simply minimized the damages. If they had refused to allow the land to be put in corn when the tenants were unable to put it in tobacco, it might well be claimed that

they had not used ordinary care to minimize the damages, and Mudd would have more substantial ground of complaint. The agreement that one and a half acres of the tobacco might be put on the side of the creek next the house, rather than on the other side, was made for the accommodation of the tenants and at their request. It did not impose any heavier burden upon them, or change in any way the substance of the contract. In conducting farming operations it is often necessary to make slight changes like this as the season progresses, and such changes, not affecting in any way the substance of the contract, should be regarded within the reasonable contemplation of the parties. This rule has been often applied in building contracts, and we see no reason why it should not be equally applicable in farming contracts. (Cook v. White Common School District, 111 S. W. 686.)

It is also insisted that the court erred in refusing certain instructions asked by the defendant on the trial. All that the bill of exceptions contains in regard to these instructions is as follows:

"Defendants moved the court to give to the jury instructions marked 1, 2, 3, and 4. (See page ——— for instructions.)

"The court overruled the motion and refused to give said instructions, to which ruling defendant excepted."

The instructions are not embraced in the bill of exceptions or made part of it in any way, though they are copied in another part of the transcript. It has often been held that instructions not made a part of the record by an order of court or by the bill of exceptions or embodied in the bill of exceptions, cannot be considered on appeal, although copied into the transcript by the clerk. (Forest v. Crenshaw, 81 Ky., 51; C. O. & S. W. R. R. Co. v. Smith, 101 Ky., 714; Johnson v. Postal Tel. Co., 20 R., 1821; Tinsley v. White, 21 R. 1152; Gambrell v. Gambrell, 130 Ky., 717; Runyons v. Burchett, 135 Ky., 22.) We cannot therefore consider the refused instructions for any purpose.

All the evidence which was admitted before the jury on the question of damages was as to the difference in value of the crops which the tenants in fact made, and what the land should have produced with reasonable attention, and under the evidence we do not see that the jury could have been misled by the failure of the court to define more fully the measure of damages. The Code

requires that errors not affecting the substantial rights of the adverse party shall be disregarded, and that no judgment shall be reversed for any such error. On all the evidence we cannot say that the verdict of the jury, is palpably against the evidence.

Judgment affirmed.